**FAEGRE DRINKER BIDDLE & REATH LLP**
Jeffrey S. Jacobson
jeffrey.jacobson@faegredrinker.com
Jennifer G. Chawla
jennifer.chawla@faegredrinker.com
600 Campus Drive
Florham Park, New Jersey 07932-1047
Tel.: (973) 549-7000
Fax.: (973) 549-9831
*Attorneys for Defendant Match Group, LLC*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| SYLVIA CIAPINSKA, on behalf of herself and all others similarly situated,<br><br>*Plaintiffs,*<br><br>v.<br><br>TINDER, INC.; and DOES 1–10, inclusive,<br><br>*Defendants.* | Civil Action No.<br>2:23-cv-23115-SDW-LDW |

---

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT MATCH GROUP, LLC'S MOTION TO COMPEL ARBITRATION OR, IN THE ALTERNATIVE, TO TRANSFER THE CASE TO THE NORTHERN DISTRICT OF TEXAS

---

i

# TABLE OF CONTENTS

I. INTRODUCTION ........................................................................................................ 1

II. STATEMENT OF FACTS ........................................................................................ 3

   A.  The Terms of Use ................................................................................................ 3

      1.  The TOU's Arbitration, Venue, and Choice of Law Provisions ..................... 5

   B.  Procedural History ............................................................................................. 8

III. LEGAL ARGUMENT ............................................................................................. 9

   A.  The Legal Standard for Enforceability of the Arbitration Agreement ............... 9

   B.  Plaintiff's Assent to the TOU's Arbitration Agreement Is Enforceable. .......... 11

   C.  Any Disputes Over Scope Are For the Arbitrator To Decide ........................... 14

   D.  In Any Event, Plaintiff's Claims Are Within the Scope of the Arbitration Agreement. ................................................................................................................ 16

   E.  After Compelling Arbitration, the Court Should Dismiss or Stay This Case. .. 18

   F.  Alternatively, the Valid Forum-Selection Clause in this Case Supports Transferring this Litigation to the United States District Court for the Northern District of Texas. ................................................................................................... 18

IV. CONCLUSION ...................................................................................................... 20

# TABLE OF AUTHORITIES

**Cases**                                                             **Page(s)**

*Ackies v. Scopely, Inc.*,
No. 19 Civ. 19247, 2022 WL 214541 (D.N.J. Jan. 25, 2022) ................................... 15

*Am. Express Co. v. Italian Colors Rest.*,
570 U.S. 228 (2013) ........................................................................................... 9, 10

*AT&T Mobility, LLC v. Concepcion*,
563 U.S. 333 (2011) ......................................................................................... 10, 16

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,
475 U.S. 643 (1986) ................................................................................................. 17

*Atalese v. US Legal Services Group*, 99 A.3d 306, 313 (N.J. 2014) ....................................... 8

*Atlantic Marine Constr. Co. v. U.S. District Court for Western District of Texas*,
134 S. Ct. 568 (2013) ............................................................................................... 18

*Beture v. Samsung Elecs. Am., Inc.*,
No. 17 Civ. 5757, 2018 WL 4621586 (D.N.J. July 18, 2018) ................................... 12

*Buckeye Check Cashing, Inc. v. Cardegna*,
546 U.S. 440 (2006) ................................................................................................... 9

*Cadapult Graphic Sys., Inc. v. Tektronix, Inc.*,
98 F. Supp. 2d 560 (D.N.J. 2000) .............................................................................. 19

*Carrone v. United Health Grp. Inc.*,
No. 20 Civ. 5138, 2020 WL 4530032 (D.N.J. Aug. 6, 2020) ................................... 16

*Chesapeake Appalachia, LLC v. Scout Petroleum, LLC*,
809 F.3d 746 (3d Cir. 2016) ..................................................................................... 15

*Collins & Aikman Prod. Co. v. Bldg. Sys., Inc.*,
58 F.3d 16 (2d Cir. 1995) ......................................................................................... 17

*CompuCredit Corp. v. Greenwood*,
565 U.S. 95 (2012) ................................................................................................... 16

*Crawford v. West Jersey Health Sys.*,
847 F.Supp. 1232 (D.N.J. 1994) ................................................................................. 9

*D'Ambola v. Daily Harvest, Inc.,*
No. 22 Civ. 6316, 2023 WL 3720888 (D.N.J. May 30, 2023) ............................ 11, 19

*Dean Witter Reynolds, Inc. v. Byrd,*
470 U.S. 213 (1985) ................................................................. 10

*Derbin v. Access Wealth Mgmt., LLC,*
No. 11-812, 2011 WL 4751992 (D.N.J. Oct. 7, 2011) ................................ 14

*Descafano v. BJ's Wholesale Club, Inc.,*
No.: 15-cv-7883 (PGS)(DEA), 2016 WL 1718677 (D.N.J. April 28,
2016) .................................................................................... 9

*Doctor's Assocs. Inc. v. Casarotto,*
517 U.S. 681 (1996) ................................................................. 16

*Epic Sys. Corp. v. Lewis,*
138 S. Ct. 1612 (2018) .............................................................. 10

*Flinktoke Co. V. Aviva PLC,*
769 F.3d 215 (3rd Cir. 2014) ....................................................... 16

*Henry Schein, Inc. v. Archer & White Sales, Inc.,*
139 S. Ct. 524 (2019) ............................................................... 14

*Jordan v. Petco Health and Wellness Co.,*
No. 21 Civ. 1858, 2022 WL 4237519 (W.D. Pa. Sept. 14, 2022) ............................ 11

*Kidstar v. Facebook, Inc.,*
No. 18 Civ. 13558, 2020 WL 4382279 (D.N.J. July 31, 2020) ............................ 12, 19

*Kirleis v. Dickie, McCamey & Chilcote, P.C.,*
560 F.3d 156 (3d Cir. 2009) ......................................................... 10

*Labib v. Younan,*
755 F.Supp. 125 (D.N.J. 1991) ....................................................... 14

*Lloyd v. Hovensa, LLC,*
369 F.3d 263 (3d. Cir. 2004) ........................................................ 10

*Lloyd v. Retail Equation, Inc.,*
No. 21 Civ. 17057, 2022 WL 18024204 (D.N.J. Dec. 29, 2022) ............................ 11

*M/S Bremen v. Zapata Off-Shore Co.*,
407 U.S. 1 (1972) ................................................................................................ 19

*Mastrobuono v. Shearson Lehman Hutton, Inc.*,
514 U.S. 52 (1995) ............................................................................................. 16

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1 (1983) ........................................................................................ 10, 17

*Mucciariello v. Viator, Inc.*,
No. 18 Civ. 14444, 2019 WL 4727896 (D.N.J. Sept. 27, 2019) ...................... 12

*Noble v. Samsung Elec. Am., Inc.*,
682 F. App'x 113 (3d Cir. 2017) ...................................................................... 11

*Olde Homestead Golf Club v. Elec. Transaction Sys. Corp.*,
714 F. App'x 186 (3d Cir. 2017) ................................................................. 18, 19

*Palmer v. Savoy et al.*,
No. 20 CVS 94, 2021 WL 9098026 (N.C. Super. Ct. Apr. 19, 2021) ............... 13

*Preziosi v. JetSmarter, Inc*,
Civ. A. No. 19-13627, 2020 WL 978637 (D.N.J. Feb. 28, 2020) ..................... 14

*Reale v. Match Group, LLC*,
No. 3:21-CV-01571 (VAB), 2022 WL 4115660 (D. Conn. Sept. 9,
2022) ................................................................................................................. 13

*Richardson v. Coverall N. Am, Inc.*,
811 F. App'x 100 (3d Cir. 2020) ...................................................................... 15

*Troia v. Tinder, Inc.*,
No. 4:19-CV-1647 RLW, 2020 WL 619855 (E.D. Mo. Feb. 10, 2020) ............ 13

*Welding Engineers Ltd. v. NFM/Welding Engineers, Inc.*,
No. 21-1372, 2022 WL 7352206 (3d Cir. Oct. 13, 2022) .................................. 17

*In re Zhejiang Topoint Photovoltaic Co., Ltd.*,
No. 14–24549 (JNP), 2017 WL 6513433 (D.N.J. Dec. 19, 2017) ..................... 18

*Zirpoli v. Midland Funding, LLC*,
48 F.4th 136 (3rd Cir. 2022) ............................................................................ 16

**Statutes, Rules & Regulations**

9 U.S.C. § 2 ............................................................................................................. 2, 9

9 U.S.C. § 3 ..................................................................................................... 2, 10, 18

28 U.S.C. § 1404(a) .................................................................................. 2, 9, 18, 20

Federal Arbitration Act ...................................................................................*passim*

New Jersey Consumer Fraud Act .................................................................... 2, 16

**Other Authorities**

American Arbitration Association, Consumer Arbitration Rules, Rule
   14(a) ................................................................................................................. 15

## I.   <u>INTRODUCTION</u>

When Plaintiff Sylvia Ciapinska created a Tinder account, she agreed to arbitrate any disputes she has with Match Group, LLC ("Match," improperly sued here as "Tinder, Inc."[1]), and to litigate any non-arbitrable disputes in federal or state courts of Dallas County, Texas.  This case, accordingly, does not belong in a judicial forum, and certainly does not belong in a New Jersey court.  The Court should compel Plaintiff to arbitrate her claims or, in the alternative, transfer the case to the United State District Court for the Northern District of Texas.

Tinder is an online dating software application that can be downloaded as a mobile app or accessed on a web browser.  Tinder works by allowing a user to view the profiles of other Tinder users and to express either interest or disinterest in those other users' profiles.  If two users express mutual interest, they are matched and can thereafter communicate within Tinder.  Tinder is a free service, but users may elect to purchase Tinder subscriptions, such as Tinder Gold and Tinder Plus, and other features that enhance their enjoyment of the service.

In October 2019, Plaintiff created two accounts with Tinder, and subscribed to Tinder Plus.  Plaintiff alleges that another Tinder user later created a different Tinder account using her likeness, and she is seeking monetary and emotional distress damages

---

[1] Tinder, Inc. no longer exists as a corporate entity.  *See* Notice of Removal ¶ 1, ECF No. 1.  Match Group, LLC, as successor to Tinder, Inc.'s assets and liabilities, currently owns and operates the Tinder service.  *Id.*

from Match for this person's alleged misappropriation of her likeness.  Separately, on behalf of herself and a putative class of Tinder users residing in New Jersey, Plaintiff alleges that Match falsely advertised its "Photo Verification" process, claiming Match essentially promised this process would prevent another user from misappropriating her likeness.  She alleges that Match therefore violated the New Jersey Consumer Fraud Act ("NJCFA").  *See* Complaint ("Compl.," Dkt. No. 1-1) ¶¶ 57–67.

When Plaintiff created her Tinder accounts, and again when she subscribed to Tinder Plus, she agreed to the Tinder Terms of Use ("TOU").  The TOU included a broad agreement to arbitrate any disputes "arising out of or relating to [the TOU] (including any alleged breach [of the TOU]), or the [Tinder] Service, regardless of the date of accrual and including past, pending, and future claims," and to litigate claims "that for whatever reason are not submitted to arbitration . . . exclusively in the federal or state courts of Dallas County, Texas."  Pursuant to the Federal Arbitration Act (the "FAA"), which—along with controlling precedent interpreting the FAA—make arbitration mandatory, Match respectfully requests that the Court enter an order compelling Plaintiff to pursue her claims in arbitration.  This litigation then should be dismissed, or, in the alternative, stayed.  *See* 9 U.S.C. §§ 2, 3.  If the Court does not compel arbitration, the Court should transfer the matter to the Northern District of Texas pursuant to 28 U.S.C. § 1404(a) and the parties' agreed forum selection clause.

## II.     STATEMENT OF FACTS

### A. The Terms of Use



Plaintiff created two Tinder accounts in October 2019 using an Apple iOS device, one on October 13 (which she deleted the next day) and the other on October 15. *See* Declaration of Jennifer Flashman ("Flashman Decl.") ¶ 5.  Before Plaintiff could use Tinder, she was required to log in by tapping on a "Log In" button or "Create a New Account" link that appeared just below a disclosure stating, "By creating an account or logging in, you agree to our Terms," with the word "Terms" underlined to show it was a hyperlink to the Tinder TOU.  *Id.* ¶¶ 5-6 & Exs. A & B.  The relevant screen (Exhibit A) is depicted above.  Plaintiff could not have created or accessed

accounts, or used the Tinder service, without clicking on the "Log In" button or the "Create a New Account" link.  *See id.* ¶ 7.  Thus, Plaintiff assented to the Tinder TOU in effect at that time (Exhibit B) when she created her accounts and proceeded to "Log In."[2]



---

[2] Plaintiff also had four previous Tinder accounts that she deleted in September 2018 (at least three of which were likewise created in September 2018).  For these prior accounts too, Plaintiff agreed to TOU in a similar matter, and the TOU contained a similar arbitration provision.  *See* Flashman Decl. ¶¶ 5, 12 & Ex. D (showing the login screen present in September 2018).

After creating her October 13 account, Plaintiff then agreed to the Tinder TOU a second time on the same day when she purchased a subscription to Tinder Plus. *See id.* ¶¶ 9–11 & Ex. C. As part of the subscription process, Plaintiff was presented with the above page (Exhibit C), which required her to press a "Continue" button that appeared just above a disclosure stating, "By tapping Continue, you agree to our **Privacy Policy** and **Terms**" in order to purchase the subscription. *Id.* ¶¶ 8–9 & Ex. C. The word "Terms" in this disclosure was bolded to show it was a hyperlink to Tinder's complete TOU. *Id.* ¶ 9 & Exs. B & C. Plaintiff thus agreed to the TOU (found at Exhibit B) multiple times while using the Tinder service.

1. <u>**The TOU's Arbitration, Venue, and Choice of Law Provisions**</u>

Section 1 of the TOU applicable in October 2019, *Id.*, Ex. B, begins with an overview of the agreement and a specific entreaty to review the agreement's dispute resolution terms:

> By creating a Tinder account or by using any Tinder service, whether through a mobile device, mobile application or computer (collectively, the "Service") you agree to be bound by (i) these Terms of Use, (ii) our Privacy Policy and Safety Tips , each of which is incorporated by reference into this Agreement, and (iii) any terms disclosed to you if you purchase or have purchased additional features, products or services we offer on the Service (collectively, this "Agreement"). If you do not accept and agree to be bound by all of the terms of this Agreement (other than the limited one-time opt out right for certain users provided for in Section 15), you should not use the Service.

*Id.*, Ex. B § 1. With respect to mandatory arbitration, the TOU contains a broad agreement to arbitrate any disputes, which provides in pertinent part:

> The exclusive means of resolving any dispute or claim arising out of or relating to this Agreement (including any alleged breach thereof), or the Service, regardless of the date of accrual and including past, pending, and future claims, shall be BINDING ARBITRATION administered by the American Arbitration Association under the Consumer Arbitration Rules. The one exception to the exclusivity of arbitration is that you have the right to bring an individual claim against Tinder in a small claims court of competent jurisdiction in the county in which you reside, or in Dallas County, Texas. Such arbitration shall be conducted by written submissions only, unless either you or Tinder elect to invoke the right to an oral hearing before the Arbitrator. But whether you choose arbitration or small claims court, you agree that you will not under any circumstances commence, maintain, or participate in any class action, class arbitration, or other representative action or proceeding against Tinder.

*Id.*, Ex. B § 15.1 (emphasis in original).

> By accepting this Agreement, you agree to the Arbitration Agreement in this Section 15 (subject to the limited one-time right to opt out within thirty (30) days belonging to users who first created an account or used the Service prior to May 9, 2018 (such users, "Legacy Users"), discussed below). In doing so, BOTH YOU AND TINDER GIVE UP THE RIGHT TO GO TO COURT to assert or defend any claims between you and Tinder (except for matters that may be properly taken to a small claims court and are within such court's jurisdiction). YOU ALSO GIVE UP YOUR RIGHT TO PARTICIPATE IN A CLASS ACTION OR OTHER CLASS PROCEEDING, including, without limitation, any past, pending or future class actions, including those existing as of the date of this Agreement . . . .

*Id.*, Ex. B § 15.2 (emphasis in original).

> If you assert a claim against Tinder outside of small claims court, your rights will be determined by a NEUTRAL ARBITRATOR, NOT A JUDGE OR JURY, and the arbitrator shall determine all claims and all issues regarding the arbitrability of the dispute. The same is true for Tinder. Both you and Tinder are entitled to a fair hearing before the arbitrator. The arbitrator can generally grant

the relief that a court can, but you should note that arbitration proceedings are usually simpler and more streamlined than trials and other judicial proceedings. Decisions by the arbitrator are enforceable in court and may be overturned by a court only for very limited reasons. For details on the arbitration process, see our **Arbitration Procedures**.

The Jurisdiction and Venue provisions in Sections 16 and 17 are incorporated and are applicable to this Arbitration Agreement.

. . .

WHETHER TO AGREE TO THIS ARBITRATION AGREEMENT IS AN IMPORTANT DECISION.  IT IS YOUR DECISION TO MAKE, AND YOU SHOULD TAKE CARE TO CONDUCT FURTHER RESEARCH AND TO CONSULT WITH OTHERS — INCLUDING BUT NOT LIMITED TO AN ATTORNEY — REGARDING THE CONSEQUENCES OF YOUR DECISION, JUST AS YOU WOULD WHEN MAKING ANY OTHER IMPORTANT BUSINESS OR LIFE DECISION.

*Id.*, Ex. B §§ 15.3 & 15.4 (emphasis in original).

Except where our arbitration agreement is prohibited by law, the laws of Texas, U.S.A., without regard to its conflict of laws rules, shall apply to any disputes arising out of or relating to this Agreement, the Service, or your relationship with Tinder. Notwithstanding the foregoing, the Arbitration Agreement in Section 15 above shall be governed by the Federal Arbitration Act.

*Id.*, Ex. B § 16.

With respect to the venue for any non-arbitrable claims, the TOU further provide that:

Except for claims that may be properly brought in a small claims court of competent jurisdiction in the county in which you reside or in Dallas County, Texas, all claims arising out of or relating to this Agreement, to the Service, or to your relationship with Tinder that for whatever reason are not submitted to arbitration will be litigated exclusively in the federal or state courts of Dallas County,

Texas, U.S.A.  You and Tinder consent to the exercise of personal jurisdiction of courts in the State of Texas and waive any claim that such courts constitute an inconvenient forum.[3]

*Id.*, Ex. B § 17.

The TOU provide that the arbitration agreement and forum selection clauses, which appears in Sections 16 and 17, survive any termination of a user's account:

> Tinder may terminate your account at any time without notice if it believes that you have violated this Agreement. Upon such termination, you will not be entitled to any refund for purchases. After your account is terminated, this Agreement will terminate, except that the following provisions will still apply to you and Tinder: Section 4, Section 5, and Sections 12 through 19.

*Id.*, Ex. B § 4.

## B. <u>Procedural History</u>

Violating her agreement to the TOU, its binding dispute resolution procedures, and its forum selection clause, on September 27, 2023, Plaintiff filed suit in the Superior Court of New Jersey, Law Division, Bergen County, Docket Number BER-L-5188-23. Plaintiff served her Complaint on Match on November 14, 2023.  On December 14, 2023, Match filed its Notice of Removal, thereby removing the litigation to this Court.

---

[3] This disclosure to Tinder users that they are waiving their rights to litigate in court and to have their claims decided by a jury satisfy the New Jersey Supreme Court's requirement for arbitration agreements set forth in *Atalese v. US Legal Services Group*, 99 A.3d 306, 313 (N.J. 2014).

## III.   <u>LEGAL ARGUMENT</u>

Plaintiff's claims against Match are subject to mandatory arbitration as set forth in the TOU.  The Court therefore should compel Plaintiff's claims to arbitration and dismiss or stay this action while the arbitration proceeds.  Alternatively, the Court should transfer the case to the Northern District of Texas pursuant to the TOU's forum selection clause and 28 U.S.C. § 1404(a).

### A.   <u>The Legal Standard for Enforceability of the Arbitration Agreement</u>

The arbitration agreement in the TOU is governed by the FAA, which mandates that binding arbitration agreements in contracts "evidencing a transaction involving [interstate] commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2. The TOU state that the FAA applies, but the FAA would apply here even without that explicit call-out because the Tinder TOU "evidence[es] a transaction involving [interstate] commerce."  9 U.S.C. § 2; *Descafano v. BJ's Wholesale Club, Inc.*, No.: 15-cv-7883 (PGS)(DEA), 2016 WL 1718677, at *2 (D.N.J. April 28, 2016) (citing *Crawford v. West Jersey Health Sys.*, 847 F.Supp. 1232, 1240 (D.N.J. 1994)).

The FAA "embodies the national policy favoring arbitration and places arbitration agreements on equal footing with all other contracts."  *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006).  Because of this national policy, "courts must 'rigorously enforce' arbitration agreements."  *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013).  Courts must compel arbitration when (1) the parties have entered

into a valid agreement to arbitrate, and (2) the dispute at issue comes within the scope of the arbitration agreement. *See Century Indem. Co. v. Certain Underwriters at Lloyd's, London, subscribing to Retrocessional Agreement Nos. 950548, 950549, 950646*, 584 F.3d 513, 523 (3d Cir. 2009) ("Before compelling a party to arbitrate pursuant to the FAA, a court must determine that (1) there is an agreement to arbitrate and (2) the dispute at issue falls within the scope of that agreement." (citing *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 160 (3d Cir. 2009))).

Where issues in the case are within the scope of an arbitration agreement and one party seeks to compel arbitration, a court has no discretion and must grant the request. *See* 9 U.S.C. § 3; *see also Lloyd v. Hovensa, LLC*, 369 F.3d 263, 269 (3d. Cir. 2004); *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) ("the [FAA] … mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed" (emphasis in original)). *See Century Indem. Co*, 584 F.3d at 522-23; *Lloyd*, 369 F.3d at 269-71; *AT&T Mobility, LLC v. Concepcion*, 563 U.S. 333, 333 (2011) (class action waivers are enforceable under the FAA). The FAA reflects a "liberal federal policy favoring arbitration agreements." *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018); *accord AT&T*, 563 U.S. at 344. Under the FAA, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983); *see also Italian Colors*, 570 U.S. at 232-33.

**B. Plaintiff's Assent to the TOU's Arbitration Agreement Is Enforceable.**

Courts uniformly have held that the manner in which Plaintiff accepted the Tinder TOU—clicking on a link under a prominent disclosure stating that clicking the link manifests assent to terms, where disclosure is and clearly appears to be a hyperlink to the terms in question—suffices to form a contract.[4]  Plaintiff repeatedly agreed to the Tinder TOU—at least six times.  Upon creating her accounts twice in October 2019, Plaintiff agreed to the TOU by tapping the "Log In" button or "Create a New Account" link appearing just below a disclosure stating, "By creating an account or logging in, you agree to our Terms."  Plaintiff also agreed to the TOU by purchasing a Tinder Plus subscription and clicking a "Continue" button that appeared just above a disclosure stating, "By tapping Continue, you agree to our **Privacy Policy** and **Terms**."

Courts have recognized that users of a computer program or application may manifest their consent to terms by tapping on buttons adjacent to a clear disclosure that clicking on the button constitutes agreement to terms, where those terms are accessible through a hyperlink.  *See, e.g.*, *D'Ambola v. Daily Harvest, Inc.*, No. 22 Civ. 6316, 2023 WL 3720888 (D.N.J. May 30, 2023) (enforcing terms of use where, at time of account creation, defendant's webpage stated that "by clicking above, you agree to our Terms

---

[4] This method of assent is known variously as a clickwrap or sign-in wrap.  A user is presented with a message on her computer screen, requiring the user to manifest her assent to the terms of the agreement by tapping on an icon.  *See Noble v. Samsung Elec. Am., Inc.,* 682 F. App'x 113, 117 n.5 (3d Cir. 2017) ("Clickwrap agreements are terms that appear on a consumer's computer screen and to which a consumer can manifest assent by clicking on an icon indicating agreement." (cleaned up)).

of Use and Terms of Sale, and consent to our Privacy Policy"); *Lloyd v. Retail Equation, Inc.*, No. 21 Civ. 17057, 2022 WL 18024204, at *2, *10–11 (D.N.J. Dec. 29, 2022) (enforcing arbitration agreement where purchase page stated "[b]y placing your order, you agree to the T.J. Maxx terms of use"); *Jordan v. Petco Health and Wellness Co.*, No. 21 Civ. 1858, 2022 WL 4237519, at *2, *5 (W.D. Pa. Sept. 14, 2022) (enforcing arbitration agreement where website stated "[b]y clicking Create Account, you agree to **Petco Pals Terms & Conditions, Terms of Use,** and **Privacy Policy**"); *Kidstar v. Facebook, Inc.*, No. 18 Civ. 13558, 2020 WL 4382279, at *3 (D.N.J. July 31, 2020) (enforcing terms of use where website stated "[b]y clicking Create Account, you agree to our **Terms**"); *Mucciariello v. Viator, Inc.*, No. 18 Civ. 14444, 2019 WL 4727896, at *4 (D.N.J. Sept. 27, 2019) (enforcing arbitration agreement where a plaintiff clicked on a "Book Now" icon and finding that the plaintiff had reasonable notice of the hyperlinked "Terms and Conditions"); *Beture v. Samsung Elecs. Am., Inc.*, No. 17 Civ. 5757, 2018 WL 4621586, at *2, *6 (D.N.J. July 18, 2018) (enforcing arbitration agreement where enrollment screen indicated "'[b]y tapping Next or otherwise using the phone, you agree to Samsung's terms and conditions,' while a hyperlink captioned 'Learn more' directs the user to a scrollable version of the [agreement]").

Indeed, courts consistently have upheld Tinder's clickwrap methods against challenges. In response to other plaintiffs' attempts to assert claims relating to the Tinder service, courts uniformly have compelled those claims to arbitration. For

example, in *Kim v. Tinder, Inc.*,[5] No. CV 18-03093 JFW (AS), 2018 WL 6694923, at *2 (C.D. Cal. July 12, 2018), the Central District of California held that Tinder's "method of consent [to the TOU] is fully enforceable."   The court found that "Plaintiff consented to the TOU by tapping the Tinder Log In button directly below a disclosure that clearly explained that doing so constituted agreement to the TOU, which was itself accessible via a hyperlink in the disclosure."  *Id.*; *see also Reale v. Match Group, LLC*, No. 3:21-CV-01571 (VAB), 2022 WL 4115660, at *6 (D. Conn. Sept. 9, 2022) holding that a "'reasonably prudent user' would be on notice of [Tinder's TOU] based on the positioning of the Log In button directly below the disclosure which explains that logging in constitutes an agreement to the TOU" and that "[t]he same is true of the screens that populated Mr. Reale's screen when he purchased subscriptions"); *Troia v. Tinder, Inc.*, No. 4:19-CV-1647 RLW, 2020 WL 619855, at *3 (E.D. Mo. Feb. 10, 2020) (the Tinder sign-up process "provide[d] adequate notice under the case law that [plaintiff] would be bound by the TOU and the privacy policy."); *Palmer v. Savoy et al.*, No. 20 CVS 94, 2021 WL 9098026 (N.C. Super. Ct. Apr. 19, 2021) (plaintiff was bound by the Tinder arbitration clause because she "was required to tap Tinder's 'Log In' button which was situated either directly above or below the disclosure, and which

---

[5]  Plaintiff's counsel, Todd Friedman, also represented the plaintiff in *Kim*.  Plaintiff's counsel is therefore aware of Tinder's TOU and its application to disputes regarding the Tinder service, making Plaintiff's flouting of the arbitration agreement and this attempted class action all the more problematic.

disclosure clearly specified that logging in would constitute agreement to the terms of use, which were accessible via a conspicuous hyperlink in the disclosure").

This Court should reach the same conclusion here. The terms of the arbitration agreement bind Plaintiff, just as they bind Match.

### C. Any Disputes Over Scope Are For the Arbitrator To Decide.

Plaintiff has no basis to argue that her claims fall outside the scope of her agreement to arbitrate. The TOU states that a user must arbitrate "any dispute or claim arising out of or relating to this Agreement (including any alleged breach thereof), or the Service, regardless of the date of accrual and including past, pending, and future claims." Flashman Decl., Ex. B § 15.1. "Service," for the purposes of the TOU, is defined as "creating a Tinder account or by using any Tinder service, whether through a mobile device, mobile application or computer (collectively, the "Service")." *Id.*, Ex. B §1. Courts broadly interpret phrases such as "arising out of or relating to" as used in the TOU. *Derbin v. Access Wealth Mgmt., LLC*, No. 11-812, 2011 WL 4751992, at * 11 (D.N.J. Oct. 7, 2011) (citations omitted); *Labib v. Younan*, 755 F.Supp. 125, 128 (D.N.J. 1991) (broadly construing agreement that required arbitration of "[a]ny controversies or disagreements arising out of, or relating to this Agreement or the breach thereof").

Even if Plaintiff attempts to make a scope argument, the Court must refer disputes over arbitrability to the arbitrator because Plaintiff agreed to this. Specifically, subsection 15.3 of the TOU provides that, "the arbitrator shall determine all claims and all issues regarding the arbitrability of the dispute." When a contract "delegates the

arbitrability question to an arbitrator," as the TOU does, "the court must respect the parties' decision as embodied in the contract." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 528 (2019); *Preziosi v. JetSmarter, Inc*, Civ. A. No. 19-13627, 2020 WL 978637, at *3 (D.N.J. Feb. 28, 2020) ("[T]he Court does not reach the issue of arbitrability, as that is a matter for the arbitrator's review.").

The TOU's express delegation to the arbitrator is clear on its own, and further, the TOU states that the arbitration shall be administered by "American Arbitration Association under the Consumer Arbitration Rules." Flashman Decl., Ex. B § 15.1. AAA Consumer Rule 14(a) states that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." *See Consumer Arbitration Rules*, American Arbitration Association (Sept. 1, 2014), https://adr.org/sites/default/files/Consumer-Rules-Web_0.pdf.

Judicial consensus has formed that incorporation of AAA Rules into an arbitration agreement constitutes clear evidence that the parties intended and agreed to allow arbitrators to decide arbitrability issues. *See, e.g., Richardson v. Coverall N. Am, Inc.*, 811 F. App'x 100, 103 (3d Cir. 2020) (an agreement's incorporation of AAA rules "constitutes clear and unmistakable evidence that the parties agreed to delegate arbitrability"); *Chesapeake Appalachia, LLC v. Scout Petroleum, LLC*, 809 F.3d 746, 763-64 (3d Cir. 2016) (collecting cases and finding that "virtually every circuit to have considered the issue" has decided that the incorporation of arbitration rules is "clear

and unmistakable evidence that the parties agreed to arbitrate arbitrability"); *Ackies v. Scopely, Inc.*, No. 19 Civ. 19247, 2022 WL 214541, at *8 (D.N.J. Jan. 25, 2022) (invocation of AAA Rules provides "clear and unmistakable" evidence delegating arbitrability questions to the arbitrator); *Carrone v. United Health Grp. Inc.*, No. 20 Civ. 5138, 2020 WL 4530032, at *3 (D.N.J. Aug. 6, 2020) (AAA Rules "need not be appended to the arbitration agreement" for their incorporation by reference to be binding.).

Accordingly, in the event of any dispute over whether Plaintiff's claims fall within the scope of her validly formed agreement to arbitrate, the Court must compel that dispute to arbitration, as well.

### D. In Any Event, Plaintiff's Claims Are Within the Scope of the Arbitration Agreement.

Even if Plaintiff and Match had not elected to grant the arbitrator power to decide threshold questions of arbitrability (which they did), there can be no doubt that both of Plaintiff's claims, for appropriation of likeness and violation of the NJCFA, fall within the scope of her agreement to arbitrate.  The Supreme Court has repeatedly and emphatically confirmed that the FAA evinces a staunch federal policy favoring rigorous enforcement of arbitration clauses as written.  *See*, e.g., *CompuCredit Corp. v. Greenwood*, 565 U.S. 95 (2012); *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011); *Doctor's Assocs. Inc. v. Casarotto*, 517 U.S. 681 (1996); *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52 (1995).  Third Circuit case law is in accord.  *See*, e.g., *Zirpoli v. Midland*

*Funding, LLC*, 48 F.4th 136 (3rd Cir. 2022); *Flinktoke Co. V. Aviva PLC*, 769 F.3d 215 (3rd Cir. 2014).

"In determining whether the particular dispute falls within a valid arbitration agreement's scope, 'there is a presumption of arbitrability: an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Century Indem. Co.*, 584 F.3d at 524 (quoting *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986)); *see also Moses H. Cone*, 460 U.S. at 24-25 ("any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration"). This presumption is particularly applicable where the arbitration clause is broadly worded, as the TOU is here. *See AT&T Techs.*, 475 U.S. at 650.

Section 15.1 of the TOU broadly requires arbitration of any "dispute or claim arising out of or relating to [the TOU] . . . or the [Tinder] Service." Flashman Decl., Ex. B § 15.1. The "Service" is defined as "creating a Tinder account or [] using any Tinder service." *Id.*, Ex. B § 1. Arbitration agreements that cover claims "arising out of or relating to" an agreement or service represent "the paradigm of a broad clause." *Welding Engineers Ltd. v. NFM/Welding Engineers, Inc.*, No. 21-1372, 2022 WL 7352206, at *4 (3d Cir. Oct. 13, 2022), *quoting Collins & Aikman Prod. Co. v. Bldg. Sys., Inc.*, 58 F.3d 16, 20 (2d Cir. 1995). Both of Plaintiff's claims arise from her dissatisfaction with the Tinder service, and therefore fall within the scope of the parties' arbitration agreement.

Accordingly, even if the Court were to decide itself—as it should not—issues of arbitrability that the parties' agreement and AAA Rules delegate to the arbitrator, the Court should conclude that the scope of the parties' arbitration agreement covers Plaintiff's claims here.

### E. <u>After Compelling Arbitration, the Court Should Dismiss or Stay This Case.</u>

Because the entire action is subject to arbitration, this court should dismiss the action. *See In re Zhejiang Topoint Photovoltaic Co., Ltd.*, No. 14–24549 (JNP), 2017 WL 6513433, at *4-5 (D.N.J. Dec. 19, 2017) (granting a party's motion to dismiss for that party to pursue arbitration). In the alternative, the FAA permits a court to stay a lawsuit in deference to an arbitration agreement "upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement." 9 U.S.C. § 3.

### F. <u>Alternatively, the Valid Forum-Selection Clause in this Case Supports Transferring this Litigation to the United States District Court for the Northern District of Texas.</u>

In addition to agreeing to arbitrate any claims against Match, Plaintiff also agreed to litigate claims that "for whatever reason" are not compelled to arbitration in Dallas County, Texas. Flashman Decl., Ex. B § 17. Federal law provides that, "for the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a); *see Atlantic Marine Constr. Co. v. U.S. District Court for Western District of Texas,*

134 S. Ct. 568, 582 (2013) (finding that "forum-selection clauses should control except in unusual cases"); *Olde Homestead Golf Club v. Elec. Transaction Sys. Corp.*, 714 F. App'x 186, 190 (3d Cir. 2017) ("A forum-selection clause is presumptively valid and will be enforced unless the party objecting to its enforcement demonstrates that enforcement of the clause would violate a strong public policy of the forum," so "such clauses are to be given controlling weight in all but the most exceptional cases." (citation omitted)). Accordingly, in the unlikely event the Court does not compel arbitration, the Court should transfer this case to the Northern District of Texas.

It is well settled that forum selection clauses are "prima facie valid" and should be enforced unless shown to be "'unreasonable' under the circumstances." *Cadapult Graphic Sys., Inc. v. Tektronix, Inc.*, 98 F. Supp. 2d 560, 564–565 (D.N.J. 2000) (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 9–10 (1972)). As with arbitration agreements, forum selection clauses assented to through a "clickwrap" process are valid and enforceable. *See, e.g.*, *D'Ambola*, 2023 WL 3720888, at *3 (D.N.J. May 30, 2023) (enforcing forum selection clause agreed to in same manner as Plaintiff here); *Kidstar*, 2020 WL 4382279, at *3 (same).

A valid and enforceable forum selection clause is contained in Match's TOU. The forum selection clause provides that "for whatever reason are not submitted to arbitration," those claims "will be litigated exclusively in the federal or state courts of Dallas County, Texas, U.S.A." Flashman Decl., Ex. B § 17. This provision was plainly communicated to Plaintiff when she expressly agreed to the TOU, and it applies to

Plaintiff's claims to the extent (if any) that they are not arbitrable. *See id.*, Exs. A-D; *D'Ambola*, 2023 WL 3720888, at *3 (D.N.J. May 30, 2023); *Kidstar*, 2020 WL 4382279, at *3. The forum selection clause in Match's TOU is presumptively valid, and Plaintiff cannot demonstrate that it is unreasonable or unjust. *Olde Homestead Golf Club*, 714 F. App'x at 190 ("A forum-selection clause is presumptively valid and will be enforced unless the party objecting to its enforcement demonstrates that enforcement of the clause would violate a strong public policy of the forum"). This is not one of "the most exceptional cases" where a forum selection clause should be cast aside in deference to significant public interest concerns because there are none. *See id.* Accordingly, if the Court elects not to compel arbitration at this time, it should transfer this action to the United States District Court for the Northern District of Texas under the TOU's forum selection clause and 28 U.S.C. § 1404(a).

## IV.   <u>CONCLUSION</u>

Match respectfully requests that the Court compel Plaintiff to arbitrate her claims and dismiss this action, or, in the alternative, stay this action pending arbitration.

Respectfully submitted,


Dated: December 21, 2023                    By: */s/ Jeffrey S. Jacobson*
                                            Jeffrey S. Jacobson
                                            Jeffrey.jacobson@faegredrinker.com
                                            Jennifer G. Chawla
                                            Jennifer.chawla@faegredrinker.com
                                            600 Campus Drive
                                            Florham Park, New Jersey 07932-1047
                                            (973) 549-7000
                                            *Attorneys for Defendant*
                                            *Match Group, LLC.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 21st day of December 2023, a true and correct copy

of the foregoing Notice of Removal was filed via ECF and served via e-mail, to:

Ross H. Schmierer
Schmierer Law Group, LLC
3000 Atrium Way, Suite 200
Mount Laurel, New Jersey 08054

Todd M. Friedman
Law Offices of Todd M. Friedman
21031 Ventura Boulevard, Suite 340
Woodland Hills, California 91364

*Attorney for Plaintiffs*

*/s/ Jeffrey S. Jacobson*